# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFERY L. THOMAS, | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 07-45 Erie |
| v. | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

McLAUGHLIN, SEAN J., J.

     Plaintiff, Jeffery L. Thomas, commenced the instant action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq,* and § 1381 *et seq.* Thomas filed applications for DIB and SSI on April 14, 2004, alleging disability since December 12, 2003 due to blood clots and deep vein thrombosis (Administrative Record, hereinafter "AR", 44-50; 59; 71; 285-286). His applications were denied and he requested a hearing before an administrative law judge ("ALJ") (AR 35-38; 40; 288-292). A hearing was held before an administrative law judge ("ALJ") on March 9, 2006 (AR 297-326). Following this hearing, the ALJ found that Thomas was not entitled to a period of disability, DIB or SSI under the Act (AR 18-26). His request for review by the Appeals Council was denied (AR 6-9), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). The instant action challenges the ALJ's decision. Presently pending before the Court are cross-motions for summary judgment. For the reasons set forth below, we will grant Defendant's motion and deny Plaintiff's motion.

### **I. BACKGROUND**

     Thomas was born on April 15, 1970, and was thirty-six years old at the time of the hearing before the ALJ (AR 24). He completed the ninth grade and had a work history as a truck driver, oil well worker, lumber stacker, track layer, asbestos laborer and tool and die operator

1

(AR 60; 65; 78-85). He reported that his last day worked was December 22, 2003 when he was "laid off for lack of work" and because he could not perform his duties "due to other illness" (AR 59).

On March 24, 2004, Thomas presented to the emergency room complaining of left leg pain (AR 113). He reported that he had experienced intermittent swelling and discoloration for about six weeks (AR 113). He was hospitalized, and Frank J. McLaughlin, D.O., diagnosed him with vascular insufficiency in the left lower extremity[1] (AR 112). A bilateral lower extremity venous Doppler suggested a deep venous thrombosis ("DVT") of the left leg, and he underwent Heparin therapy (AR 114; 117). He was discharged on March 31, 2004 and Dr. McLaughlin prescribed Lovenox and Coumadin, two blood thinning medications (AR 110). He was instructed to follow up with Dr. McLaughlin in one week (AR 110).

On April 6, 2004, Thomas reported to Dr. McLaughlin that he was doing well, although he noted some increased leg pain (AR 144). Dr. McLaughlin's physical examination of Thomas was unremarkable and he referred him to a vascular surgeon for evaluation (AR 144).

When seen by Dr. McLaughlin on April 22, 2004, Thomas complained of left leg swelling and pain (AR 141). Dr. McLaughlin noted on physical examination "plus 3" pitting edema (AR 141). He scheduled a repeat ultrasound, started him on Bumex, increased his Percocet and stressed the importance of taking Coumadin regularly (AR 141).

A bilateral lower extremity peripheral venous Doppler study conducted May 5, 2004 showed an extensive thrombosis within the left leg and a normal study of the right leg (AR 146). It was noted Thomas had enlarged lymph nodes within the left groin region (AR 146).

Thomas returned to Dr. McLaughlin on May 7, 2004 with complaints of leg swelling (AR 140). On physical examination, Dr. McLaughlin observed plus 3 pitting edema of the left leg, an erythematous pruritic rash and some ecchymotic areas on the dorsal aspect of the foot (AR 140). He assessed Thomas with DVT and possible vasculitis (AR 140).

Thomas was seen by Richard Sheppeck, M.D., a vascular surgeon, on May 28, 2004 (AR 131-132). Thomas reported swelling and aching pain in his left leg, as well as low back pain (AR 131). On physical examination, Dr. Sheppeck observed edema and enlarged lymph nodes

---

[1] Dr. McLaughlin is no relation to the undersigned.

2

(lymphadenopathy), and noted that his left leg was slightly darker in color and larger in diameter than his right leg (AR 131-132). Thomas was able to move all extremities (AR 132). Dr. Sheppeck recommended a CT of his abdomen and pelvis for further evaluation (AR 132).

When he returned to Dr. McLaughlin on June 4, 2004, Thomas reported that he continued to have a purple leg and significant pain (AR 139). Dr. McLaughlin's physical examination of Thomas was unremarkable, and no cyanosis, clubbing or edema was observed in his lower extremities (AR 139). Thomas was to follow up with Dr. Sheppeck (AR 138).

A CT scan of Thomas' abdomen and pelvis conducted June 6, 2004 revealed deep venous thrombosis in the left femoral vein, with a strong suspicion for partial thrombosis in the left iliac vein (AR 133). No other acute or suspicious findings were seen (AR 133).

When seen by Dr. McLaughlin on July 6, 2004, Thomas complained of back pain but reported that his leg was improving (AR 229). On physical examination, Dr. McLaughlin observed plus 2 pitting edema of his left leg, but no cyanosis or clubbing was observed (AR 229). He was continued on his medications (AR 229).

On July 12, 2004, Jay Newberg, M.D., a state agency reviewing physician, opined that Thomas could lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for about six hours in an 8-hour workday; sit for about six hours in an 8-hour workday; could occasionally climb, balance, stoop, kneel, crouch and crawl; and had no other limitations (AR 160-161).

Thomas returned to Dr. Sheppeck on July 16, 2004, who reported that a venous duplex examination revealed that his DVT had significantly resolved (AR 195-196). While he still had a clot in the distal superficial femoral vein and popliteal vein, doppler flow was demonstrated (AR 195). Thomas continued to complain of back pain and Dr. Sheppeck believed his pain was unrelated to his venous clot due to the significant improvement in his DVT (AR 195). He scheduled Thomas for an MRI of his lumbar spine (AR 195). The MRI was conducted on July 26, 2004, and showed minimal discogenic changes with no bulges or disc herniations identified (AR 247).

Thomas continued to report improvement with his leg when seen by Dr. McLaughlin on August 6, 2004 (AR 226). He further reported back pain, but indicated that his pain medications

3

worked fairly well (AR 226). Dr. McLaughlin's physical examination of Thomas remained essentially the same, and he noted that his MRI was normal (AR 226). Dr. McLaughlin prescribed Robaxin and Clinoril for his back pain (AR 226).

On September 3, 2004, Dr. McLaughlin reported that Thomas was doing well and that his MRI showed no significant abnormality in his back (AR 226). His physical examination of Thomas remained the same and he continued his medication regime (AR 226-227).

When he returned to Dr. McLaughlin on October 1, 2004, Thomas complained of back and leg pain (AR 227). Dr. McLaughlin's physical examination remained unchanged and he referred Thomas to a pain clinic (AR 227).

Dr. McLaughlin reported that Thomas was doing well at his follow up visit on November 1, 2004 (AR 225). His physical examination remained unchanged and he added Percocet to his medication regime (AR 224).

Thomas was evaluated by James R. Macielak, M.D., an orthopedic surgeon, on November 11, 2004 for his complaints of low back pain (AR 165-167). Thomas claimed he suffered from constant back pain which increased proportionally upon activity, but denied any radicular weakness or lower right extremity symptoms (AR 165). He stated his current medications were helpful (AR 165). On physical examination, Thomas had a markedly antalgic gait (AR 166). Dr. Macielak found moderate tenderness on the left side and straight leg raising testing produced radicular pain complaints, left greater than right (AR 166). Dr. Macielak reviewed Thomas' MRI, noting that it showed only minimal discogenic changes with no bulging or herniations seen (AR 166; 169).

Dr. Macielak diagnosed Thomas with chronic lumbar myofascial syndrome and severe deep venous thrombosis (AR 166). He was of the opinion that Thomas' pain was caused by his gait abnormality due to DVT (AR 166). Dr. Macielak informed him that he was not a surgery candidate and that injection therapy would not be helpful (AR 167). He encouraged Thomas to exercise (AR 167).

Thomas' December 2004 visit with Dr. McLaughlin was unremarkable, although Dr. McLaughlin observed trace edema bilaterally in his lower extremities (AR 224).

Thomas continued to follow up with Dr. McLaughlin throughout 2005. A doppler

venous ultrasound conducted on January 13, 2005 was reported as normal and his DVT had completely resolved (AR 190).

In February 2005, Dr. McLaughlin reported that Thomas' DVT had resolved and he had no concerns except for increasing pain (AR 220). On physical examination, there was no cyanosis or clubbing, but there was plus 1 pitting edema and chronic stasis changes of his left leg (AR 220). His Percocet was refilled and he was scheduled an appointment for reevaluation with Dr. Sheppeck (AR 220).

Thomas continued to exhibit swelling in his left leg on March 1, 2005 (AR 219). When seen by Dr. Sheppeck on March 21, 2005, he complained of significant low back pain, left leg pain and bilateral ankle pain (AR 186). Dr. Sheppeck noted that Thomas' left leg was larger in diameter than his right leg (AR 186). A venuous duplex study showed no obvious venous obstruction, but doppler exam of flow in the left common femoral vein was not as free-flowing as it was on the right side, which Dr. Sheppeck noted could indicate possible iliac venous obstruction (AR 186). Dr. Sheppeck considered evaluating Thomas for lupus due to a family history of same, and scheduled a venography which was performed in June 2005 (AR 177-179; 186).

When seen by Dr. McLaughlin on April 1, 2005, Thomas complained of leg pain but Dr. McLaughlin reported he was doing well (AR 218). On physical examination, there was plus 2 pitting edema and discoloration of the left leg, but no cyanosis or clubbing (AR 218). Dr. McLaughlin continued his medications (AR 218). No swelling was observed at his office visit in May 2005, but Thomas complained of lower extremity pain and cramping (AR 216).

On June 2, 2005, Thomas continued to complain of lower extremity pain (AR 217). He reported no other problems and his physical examination was unremarkable (AR 217). On July 1, 2005, Dr. McLaughlin noted plus 1 pitting edema bilaterally and referred Thomas to an oncologist (AR 215).

Thomas was evaluated by Narinder Malhotra, M.D., an oncologist, on July 26, 2005 pursuant to Dr. McLaughlin's request (AR 173-175). Thomas relayed his DVT history, reporting that he experienced swelling of his leg, especially with prolonged standing (AR 173). On physical examination, Dr. Malhotra observed swelling of the leg with hyperpigmentation just

5

above the ankle (AR 174). He found no significant lymphadenopathy and noted that Thomas' peripheral pulses were palpable (AR 174). Dr. Malhotra advised Thomas to stop smoking but delayed any further recommendations until he received and reviewed Thomas' diagnostic studies (AR 175).

Dr. McLaughlin reported that Thomas was doing well and had no problems at his visit on September 1, 2005 (AR 241). His physical examination was unremarkable with no edema observed (AR 241).

Thomas returned to Dr. Malhotra on September 6, 2005 with complaints of back and left leg pain (AR 171). Dr. Malhotra's physical examination remained unchanged (AR 171). He informed Thomas that his leg pain could be neuropathic and that his back pain was unrelated to his blood clot in his leg (AR 171). He was again advised to quit smoking and Dr. Malhotra referred him to a vascular clinic and a neurosurgeon for evaluation of his leg pain (AR 171).

On September 16, 2005, Dr. McLaughlin reported Thomas had plus 1 pitting edema, was doing "very well" and he had no concerns (AR 240). Dr. McLaughlin continued his medication regime (AR 240). When seen on September 30, 2005, Dr. McLaughlin again reported he was doing well with no edema reported on physical examination (AR 240).

On October 4, 2005, x-rays of Thomas' left hip and pelvis were reported as normal (AR 244).

Thomas returned to Dr. McLaughlin on November 25, 2005 who reported plus 2 pitting edema bilaterally, but no cyanosis or clubbing was present (AR 203). On December 27, 2005, Dr. McLaughlin reported only trace edema bilaterally (AR 203).

When seen by Dr. Malhotra on January 10, 2006, Thomas reported decreased swelling, although he continued to complain of back and leg pain (AR 170). Physical examination of Thomas' extremities remained unchanged (AR 170). Dr. Malhotra found some tenderness over the lumbosacral spine area (AR 170). He again recommended that Thomas seek treatment at a vascular clinic (AR 170). He further recommended that he undergo a neurosurgical or arthritic evaluation for his back pain (AR 170).

Finally, when seen by Dr. McLaughlin on January 27, 2006, Thomas reported he was doing "very well" and had no concerns (AR 201). Dr. McLaughlin's physical examination was

unremarkable and he continued his medication regime (AR 201).

Thomas and Sam Edelmann, a vocational expert, testified at the hearing held by the ALJ (AR 297-326).[2] Thomas testified that he lived with his wife and oldest child (AR 303). Thomas stated that he discontinued visitation with his two younger children since he was unable to physically care for them (AR 316-317). Thomas testified that he was able to drive and retained a commercial driver's license (AR 307-308). He denied the need for a cane or walker to ambulate (AR 308). Thomas indicated however, that he was unable to drive while under the influence of his pain medications (AR 309). He stated that he suffered from leg, back and groin pain of varying intensity (AR 309; 313). Thomas stated that his pain medication was somewhat effective in relieving his pain, but the Percocet caused drowsiness and lightheadedness (AR 309; 314).

Thomas testified that he was able to walk for about 10 to 15 feet before feeling sharp pains in his left leg and back; stand for about 10 to 15 minutes; and sit for about 5 to 10 minutes before feeling the need to get up (AR 309-310). To prevent daily leg swelling, he elevated his leg above his heart, which also usually relieved the pain (AR 310). Thomas testified that his wife helped him in and out of the shower, put on his socks and shoes, and arise from a sitting position (AR 311; 313). He further testified that he was unable to perform routine household chores, had no outside interests and did not go out or socialize (AR 311). He claimed he spent most days laying in bed elevating his feet above his chest (AR 311).

The ALJ asked the vocational expert to assume an individual of the same age, education and work experience as Thomas, who had the following work-related limitations: limited to sedentary work with a sit/stand option and the option to elevate his legs during lunch or breaks for up to a couple of minutes for every 30 minutes of work; no operation of foot controls; no climbing, balancing, squatting, crawling, or kneeling; and no use of sharp objects (AR 318-320). The vocational expert testified that such an individual could perform the following sedentary jobs: hand packer, assembler and sorter/grader (AR 318-320).

Following the hearing, the ALJ issued a written decision which found that Thomas was

---

[2]The Commissioner erroneously refers to the vocational expert as "Morton Morris," *see Defendant's Brief,* p. 8; however, the vocational expert in this case was Sam Edelmann (AR 46-47; 317-323).

7

not entitled to a period of disability, DIB or SSI within the meaning of the Social Security Act (AR 18-26). His request for an appeal with the Appeals Council was denied making the ALJ's decision the final decision of the Commissioner (AR 6-9). He subsequently filed this action.

## II. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see Richardson v. Parales,* 402 U.S. 389, 401 (1971). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson,* 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.,* 48 F.3d 114, 117 (3d Cir. 1995).

## III. DISCUSSION

Title II of the Social Security Act provides for the payment of disability insurance benefits to those who have contributed to the program and who have become so disabled that they are unable to engage in any substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). Title XVI of the Act establishes that SSI benefits are payable to those individuals who are similarly disabled and whose income and resources fall below designated levels. 42 U.S.C. § 1382(a). A person who does not have insured status under Title II may nevertheless receive benefits under Title XVI. *Compare* 42 U.S.C. § 423(a)(1) *with* 42 U.S.C. § 1382(a). In order to be entitled to DIB under Title II, a claimant must additionally establish that his disability existed before the expiration of his insured status. 42 U.S.C. § 423(a), (c). The ALJ found that Thomas met the disability insured status requirements of the Act through December 31, 2008 (AR 18). SSI does not have an insured status requirement.

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets

this definition:

> In the first two steps, the claimant must establish (1) that he is not engaged in "substantial gainful activity" and (2) that he suffers from a severe medical impairment. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If the claimant shows a severe medical impairment, the [Commissioner] determines (3) whether the impairment is equivalent to an impairment listed by the [Commissioner] as creating a presumption of disability. *Bowen*, 482 U.S. at 141. If it is not, the claimant bears the burden of showing (4) that the impairment prevents him from performing the work that he has performed in the past. *Id.* If the claimant satisfies this burden, the [Commissioner] must grant the claimant benefits unless the [Commissioner] can demonstrate (5) that there are jobs in the national economy that the claimant can perform. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985).

*Jesurum*, 48 F.3d at 117. The ALJ determined that Thomas' left lower extremity vascular insufficiency status post deep venous thrombosis was a severe impairment, but determined at step three that he did not meet a listing (AR 20-22). Despite his impairments, the ALJ found that he was able to perform work at the sedentary level provided that he was afforded a sit/stand option as needed throughout the workday; was permitted to elevate his legs waist high for 5 minutes out of every 30 minutes throughout the workday; and was not required to climb, balance, squat, crawl or kneel (AR 22). At the final step, the ALJ concluded that Thomas could perform the jobs cited by the vocational expert at the administrative hearing (AR 25). The ALJ additionally determined that his statements concerning the intensity, duration and limiting effects of his symptoms were not entirely credible (AR 23). Again, we must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Thomas argues that the ALJ's assessment of his residual functional capacity ("RFC") is contrary to the medical evidence and his testimony. "'Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec. Admin.,* 220 F.3d 112, 121 (3rd Cir. 2000), quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3rd Cir. 1999); *see also* 20 C.F.R. § 404.1545(a). An individual claimant's RFC is an administrative determination expressly reserved to the Commissioner. 20 C.F.R. § 416.927(e)(2). Social Security Ruling ("*SSR*") 96-5p

9

provides:

> The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of the evidence.

*SSR* 96-5p (1996), 1996 WL 374183 *5.

Thomas first takes issue with the ALJ's finding that his leg condition was intermittent in nature and that medication, treatment and proper therapy resulted in subsidence of swelling. Specifically, he argues that such finding demonstrates that the ALJ "substituted his own opinions for that of the medical experts." *Plaintiff's Brief* p. 9. It is undisputed that an ALJ may not substitute his own judgment for the judgment of treating sources of record or make speculative inferences from medical reports. *See Plummer v. Apfel*, 186 F.3d 422, 429 (3rd Cir. 1999); *Ferguson v. Schweiker,* 765 F.2d 31, 37 (3rd Cir. 1985). Here, however, we find no such error occurred. The ALJ thoroughly reviewed and discussed the medical evidence in fashioning Thomas' RFC. Following Thomas' hospitalization for DVT, later diagnostic studies revealed his condition had significantly or completely resolved with medication and treatment. In July 2004, Dr. Sheppeck reported that his condition had significantly improved and, as the ALJ noted, by January 2005 Dr. McLaughlin reported that his DVT had "completely resolved" (AR 195-196; 220). Dr. Sheppeck reported in March 2005 that a venous duplex study showed no obstruction, and he continued to "do well" when seen by Dr. McLaughlin through September 2005, with unremarkable physical examinations and no edema noted (AR 218; 240-241). While some trace edema was observed in December 2005 by Dr. McLaughlin, by January 2006 Thomas reported he was doing "very well" and Dr. McLaughlin's physical examination was unremarkable (AR 201; 203). The ALJ's conclusion as to the nature of Thomas' leg condition was supported by substantial evidence.

Thomas further complains that the ALJ's finding that he must elevate his legs waist high

for 5 minutes out of every 30 minutes throughout the workday "offers no insight" as to how this would affect his ability to remain on task or satisfactorily perform up to the employer's expectations. *Plaintiff's Brief* p. 9. We find no merit to this argument. The ALJ concluded that Thomas' ability to perform the full range of sedentary work was impeded by additional limitations, one of which was the need to elevate his legs throughout the workday (AR 22; 25). In order to determine the extent to which this limitation (as well as other limitations), eroded the sedentary occupational base, the ALJ sought the testimony of a vocational expert (AR 25). The vocational expert specifically testified that there would be work available for an individual who had to elevate his legs for 5 minutes out of every 30 minutes throughout the day (AR 319-322). The vocational expert's testimony may be relied upon by the ALJ and constitutes substantial evidence that Thomas can perform sedentary work with restrictions.

Thomas also argues that the ALJ's RFC assessment is flawed since his decision contains no discussion relative to the time he would be off task due to the side effects of his medication. In *Burns v. Barnhart*, 312 F.3d 113 (3rd Cir. 2002), the court noted that side effects often accompany the taking of medication, and "it should not be viewed as disabling unless the record references serious functional limitations." *Burns*, 312 F.3d at 131. Here, Thomas fails to identify, and our review of the record fails to reveal, medical evidence substantiating debilitating side effects caused by his medications.

Finally, Thomas argues that the ALJ failed to accurately portray his limitations in his hypothetical posed to the vocational expert. The law is well established that "[w]hile the ALJ may proffer a variety of assumptions to [a vocational] expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." *Podedworny v. Harris*, 745 F.2d 210, 218 (3rd Cir. 1984). In other words, "[a] hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot

be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3rd Cir. 1987), *citing, Podedworny, supra*. *See also Wallace v. Secretary of Health and Human Services*, 722 F.2d 1150 (3rd Cir. 1983).

Thomas does not identify any specific limitations the ALJ failed to include in his hypothetical to the vocational expert; rather he generally states that the ALJ's hypothetical question did not "incorporate the limitations testified to by the claimant, which are documented of record." *Plaintiff's Brief* p. 10. We disagree. Thomas testified that he suffered from pain and was only able to walk for about 10 to 15 minutes, stand for about 5 to 10 minutes and sit for about 5 to 10 minutes (AR 309-310). The ALJ accommodated his claimed limitations by restricting him to sedentary positions which allowed him a sit/stand option at will (AR 22). Thomas testified he needed to elevate his legs; the ALJ included such limitation in his hypothetical to the vocational expert (AR 22; 310). In addition, the ALJ precluded him from performing any climbing, balancing, squatting, crawling or kneeling, finding that such activities would be more difficult given his left leg condition (AR 22). Finally, he restricted him from being exposed to sharp instruments given his use of blood thinners (AR 22). Because the ALJ concluded that Dr. McLaughlin's treatment records simply did not support the degree of ongoing and constant pain alleged by Thomas, he excluded his subjective complaints from the hypothetical question (AR 22-23). An ALJ is entitled to exclude subjective complaints inconsistent with the record. "Although hypothetical questions posed by an ALJ to a vocational expert must reflect a plaintiff's impairments, an ALJ need not include every unsubstantiated assertion of limitation in his hypothetical question." *Wilson v. Sullivan,* 1991 WL 311910 at *4 (W.D.Pa. 1991), *citing Chrupcala, supra*. Rather, he must include "only those limitations supported by objective medical evidence." *Id.* We therefore find no error in this regard.

### IV. CONCLUSION

Based upon the foregoing reasons, the Commissioner's final decision will be affirmed. An appropriate Order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFERY L. THOMAS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE, ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) | Civil Action No. 07-45 Erie |

## ORDER

AND NOW, this 29th day of February, 2008, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment [Doc. No. 10] is DENIED, and the Defendant's Motion for Summary Judgment [Doc. No. 12] is GRANTED. JUDGMENT is hereby entered in favor of Defendant, Michael J. Astrue, Commissioner of Social Security, and against Plaintiff, Jeffrey L. Thomas. The clerk is directed to mark the case closed.

                                                                                     s/ Sean J. McLaughlin
                                                                                     United States District Judge

cm: All parties of record. \_\_\_\_